IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. EDWARD ERNST JR. | ) ) ) |
| Plaintiffs, | ) ) Case No.  2:19-cv-02085-JWL-JPO |
| vs. | ) ) ) |
| COLLEGE PARK ANCILLARY, LLC d/b/a COLLEGE PARK PHYSICAL THERAPY, | ) ) ) ) |
| OVERLAND PARK SURGICAL SPECIALISTS, LLC d/b/a COLLEGE PARK FAMILY CARE CENTER PHYSICIANS GROUP, | ) ) ) ) ) ) |
| COLLEGE PARK FAMILY CARE CENTER P.A., and | ) ) ) |
| HCA HEALTHCARE, INC. | ) ) |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
<u>UNDER FALSE CLAIMS ACT</u>**

Plaintiffs, United States ex rel. Edward Ernst Jr., individually, and through their counsel of record, complain and allege the following:

<u>NATURE OF COMPLAINT</u>

1. This is an action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733, and to recover all available damages, restitution, and other monetary relief under the common law theories of unjust enrichment and payment by mistake.

2. From at least April 2017 through August 2018, Defendants knowingly presented or caused to be presented false claims to the United States for payment under the Medicare program

and Tricare program. The false claims relate to Defendants' performance of certain physical therapy services, including mechanical traction (97012), paraffin baths (97018), ultrasound (97035), therapeutic exercise (97110), neuromuscular reeducation (97112), aquatic therapy (97113), manual therapy (97140), and electrical stimulation (G0283) performed by physical therapy aides and physical therapist assistants. These services were billed to Medicare and Tricare by a physical therapist when the services were not performed by or properly supervised by a physical therapist.

3. Defendants' claims to Medicare and VA/Tricare at issue in this case were false because the claimed procedures were: (1) performed by physical therapy aides whose services were not payable under the Medicare and Tricare programs; (2) performed by physical therapist assistants without appropriate supervision of a therapist when such services were not payable under Medicare; (3) performed by physical therapist assistants whose services were not payable under Tricare (4) not rendered as they were billed; (5) not in compliance with Medicare and Tricare coding, documentation, and payment policy and/or (6) not reasonable and necessary for the treatment.

## JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

5. This Court has supplemental jurisdiction to entertain the common law causes of action under 28 U.S.C. § 1367(a).

6. This Court may exercise personal jurisdiction over the Defendants under 31 U.S.C. § 3732(a) because the Defendants transacted business in this District during the time relevant to the action.

## VENUE

7. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because Defendants transacted business in this District during the time relevant to the action and the events giving rise to the present claims occurred in this District.

## PARTIES

8. Plaintiff Edward Ernst Jr. is a citizen of the United States and a resident of Nevada. At all relevant times to this action, Plaintiff Edward Ernst Jr. resided in Missouri and was employed at College Park Physical Therapy.

9. Plaintiff Edward Ernst Jr. brings this action on behalf of the United States of America pursuant to 31 U.S.C. § 3730(b)(1). The United States of America is a sovereign country whose Department of Health and Human Services purchases therapy services from Defendants through Medicare, Medicaid and Tricare programs.

10. Defendant College Park Ancillary, LLC is a Kansas limited liability corporation d/b/a College Park Physical Therapy ("College Park PT") and is a subsidiary of HCA Healthcare Inc. ("HCA"). College Park PT was established after College Park Family Care Center, P.A. was acquired by HCA and/or its other related subsidiaries in 2013, and became part of the HCA network of providers. College Park PT provides physical therapy services and treatment to individuals in the Kansas City metropolitan area, including patients who are Medicare, Medicaid, and/or Tricare beneficiaries. College Park PT continues to operate and hold itself out to the public as a College Park Family Care Center provider.

11. Defendant Overland Park Surgical Specialties, LLC d/b/a College Park Family Care Center Physicians Group ("College Park FCCPG") is a Kansas limited liability corporation and

3

subsidiary of HCA and/or other related HCA companies or subsidiaries.  College Park FCCPG was established after College Park Family Care Center, P.A. was acquired by HCA and/or its related subsidiaries in 2013, and became part of the HCA network of providers.  College Park FCCPG provides medical services to individuals in the Kansas City metropolitan area, including patients who are Medicare, Medicaid and/or Tricare beneficiaries. College Park FCCPG continues to operate and hold itself out to the public as College Park Family Care Center provider.

12. Defendant College Park Family Care Center, P.A. ("College Park FCC") was a Kansas professional corporation that provided services to residents of the Kansas City metropolitan area, including medical care and care treatment, and physical therapy services and treatment to patients who were Medicare, Medicaid, and/or Tricare beneficiaries.  In 2013, College Park FCC was acquired by HCA and/or other HCA related subsidiaries. After being acquired by HCA, College Park FCC continues its operations under the name College Park Family Care Center through at least two HCA subsidiary companies, College Park PT and College Park FCCGP. College Park FCC was formally dissolved in 2015, but is still continued as a corporate body and subject to this action under K.S.A. § 17-6807.

13. Hereinafter, College Park PT, College Park FCCPG and College Park FCC will be referred to collectively as "College Park."

14. During all times relevant to this action, College Park maintained four physical therapy clinics located at:

- 10600 Mastin St., Overland Park, KS 66212;
- 12140 W 135th St., Overland Park, KS 66221;
- 11164 S Noble Dr., Olathe, KS 66061; and

4

- 15100 Metcalf Ave., Overland Park, KS 66223

15. HCA Healthcare, Inc. ("HCA") is a Delaware corporation that is publicly traded on the New York Stock Exchange and owns and operates, by and through its subsidiaries, 185 hospitals and 1800 sites of care in 21 states and in the United Kingdom. HCA and/or its other related companies or subsidiaries acquired College Park FCC medical practice in 2013. After acquiring College Park FCC, HCA subsequently established new subsidiary corporations to continue the operations of the College Park Family Care Center healthcare practice. The subsidiary corporations of HCA that currently operate as College Park Family Care are College Park FCCPG and /or College Park PT.

16. Hereinafter, College Park and HCA will be referred to collectively as "Defendants."

STATUTORY AND REGULATORY BACKGROUND

The False Claims Act

17. The False Claims Act ("FCA") imposes penalties and damages on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval to the United States or knowingly makes, uses, or causes to be made or used, a false record of statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(A) and (B).

18. The term "knowingly" under the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(B). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

19. The FCA provides for recovery of three times the damages sustained by the United States ("treble damages") plus a civil penalty for each false claim. 31 U.S.C. § 3729(a)(1).

Medicare

20. Title XVIII of the Social Security Act of 1935 established the Medicare Program, a federally subsidized health insurance program for elderly and disabled persons. 42 U.S.C. §§ 1395-1395kkk-1.

21. Medicare is financed by premium payments by enrollees together with contributions from funds appropriated by the Federal Government. 42 U.S.C. § 1395j.

22. The Medicare program is comprised of four parts: Part A, Part B, Part C and Part D. Only Medicare Part B is directly at issue in this case.

23. Medicare Part B provides federal government funds to help pay for, among other things, physician services and outpatient therapy services. 42 U.S.C. § 1395k.

24. CMS as well as many third-party payers have adopted the American Medical Association's ("AMA") Current Procedural Terminology ("CPT") coding system for use by therapists and others to describe therapy services rendered. Medicare Claims Processing Manual, Ch. 15, § 220.

25. To be payable by Medicare, the claim must identify the services for which the provider is seeking payment by listing unique numerical codes using the CPT numerical cods. 45 C.F.R. § 162.1002(b); Medicare Claims Processing Manual, Ch. 23, § 20.

26. Claims to Medicare must also identify the individual participating provider that provided the claimed services. The individual is identified by using the provider's unique National Provider Identifier ("NPI").

27. For services to be payable, a beneficiary must need physical therapy services. Medicare Benefit Policy Manual, Ch. 15, § 220. For a service to be covered, the service must be reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A); Medicare Benefit Policy Manual, Ch. 15, § 220.

6

28. Medicare Part B excludes payment for items and services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member…" 42 U.S.C. § 1395y(a)(1)(A).

29. Services are reasonable and necessary if it is determined that, among other things, they are safe and effective, of appropriate duration and frequency within accepted standards of medical practice for the particular diagnosis or treatment and met the patient's medical needs. Medicare Program Integrity Manual, Ch. 3, § 3.6.2.2.

30. The Secretary of Health and Human Services ("the Secretary") administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS"). CMS is responsible for developing the coverage and payment details of the Medicare program through regulations and interpretive guidelines.

### Medicare – Payment for Qualified Individuals and Supervision Requirements

31. Medicare Part B does not pay for the services provided by therapy aides regardless of the level of supervision. Medicare pays only for skilled, medically necessary services delivered by qualified individuals, including physical therapists ("PTs") and appropriately supervised physical therapist assistants ("PTAs"). It is inappropriate to bill Medicare Part B for the services of a physical therapy aide, even if supervised by a PT or PTA. Part B Billing Scenarios for PT's and OT's; Medicare Benefit Policy Manual, Ch. 15 §§ 220 and 230.

32. PTAs are limited in the services they may furnish and may not supervise other therapy caregivers. In order for a PTA's service to be eligible for Medicare reimbursement, a PT must supervise the PTA. The level and frequency of supervision differs by setting (and by state or local law). General supervision is required for PTAs in all settings except private practice (which requires direct supervision) unless state practice requirements are more stringent, in which case state or local requirements must be followed. Medicare Benefit Policy Manual, Ch. 15 § 231.

33. Direct supervision for physical therapists assistants in private practice requires the physical therapist to be physically present and immediately available for direction and supervision. American Physical Therapy Association Medicare Coding and Billing Requirements. APTA – Comparison of Requirements in Outpatient Setting.[1]

### Medicare – Community Pool

34. When therapy services may be furnished appropriately in a community pool by a clinician in a physical therapist or occupational therapist private practice, physician office, outpatient hospital, or outpatient SNF, the practice/office or provider shall rent or lease the pool, or a specific portion of the pool. The use of that part of the pool during specified times shall be restricted to the patients of that practice or provider. The written agreement to rent or lease the pool shall be available for review on request. When part of the pool is rented or leased, the agreement shall describe the part of the pool that is used exclusively by the patients of that practice/office or provider and the times that exclusive use applies. Medicare Benefit Policy Manual, Ch. 15 § 220.C.

### Medicare – 8-Minute Rule

35. Both Medicare and the CPT coding guidelines provide guidance that when billing only one service in a day that is represented by timed CPT code, such as ultrasound (97035), therapeutic procedures (97110, 97112, 97113, 97116, 97124), and manual therapy (97014), it should not be reported and billed unless at least 8 minutes of services are documented. Medicare Claims Processing Manual Ch. 5 § 20.2.

36. When at least 8 minutes of services are documented, the provider may bill in 15-minute increments based upon the time the services were rendered. Each 15-minute increment represents 1

---

[1] www.apta.org/uploadedFiles/APTAorg/Payment/Medicare/Coding_and_Billing/RequirementsComparison_OutpatientSettings.pdf#search=%22general%20supervision%22

billing unit. For example, 15 minutes of services would equal 1 billing unit and 30 minutes of services would equal 2 billing units and so on.

37. The following table provides an understanding of the relationship between billing units and service time:

| Billing Units | Service Time |
|---|---|
| 1 Unit | ≥ 8 minutes through 22 minutes |
| 2 Units | ≥ 23 minutes through 37 minutes |
| 3 Units | ≥ 38 minutes through 52 minutes |
| 4 Units | ≥ 53 minutes through 67 minutes |
| 5 Units | ≥ 68 minutes through 82 minutes |
| 6 Units | ≥ 83 minutes through 97 minutes |
| 7 Units | ≥ 98 minutes through 112 minutes |
| 8 Units | ≥ 113 minutes through 127 minutes |

38. When two or more services represented by 15-minute timed CPT codes are performed in a single day, Medicare has an additional rule that permits providers to sum the number of minutes for all services rendered (as noted on the table above). For example, if 20 minutes of 97113 – Aquatic therapy – and 7 minutes of 97112 – Neuromuscular reeducation – are performed on the same day, the provider may total the minutes for both services. Per the table above, 27 minutes of therapy equal 2 billing units, hence Medicare permits providers to bill 1 unit of 97113 – Aquatic therapy – and 1 unit of 97112 – Neuromuscular reeducation.

39. If two or more services represented by 15-minute timed CPT code are performed in a single day and the total time does not allow for a unit to be billed for each service provided, then the provider must bill one unit for the service(s) performed for the most minutes. For example, if

the following services are provided: 18 minutes of therapeutic exercise (97110), 13 minutes of manual therapy (97140),10 minutes of gait training (97116) and 8 minutes of ultrasound (97035) for a total of 49 total timed minutes, then appropriate billing is for 3 units for the procedures the provider spent the most time providing. Under this example, billing for 1 unit each of 97110, 97116, and 97140 is appropriate; the provider is unable to bill for the ultrasound. Medicare Claims Processing Manual Ch. 5 § 20.2.C.

Tricare

40. In 1967, the Department of Defense created the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), which is a federally funded medical program created by Congress. 10 U.S.C. § 1071. CHAMPUS beneficiaries include active military personnel, retired personnel, and dependents of both active and retired personnel. *Id.*

41. In 1995, the Department of Defense established Tricare, a managed healthcare program, which operates as a supplement to CHAMPUS. *See* 32 C.F.R. §§ 199.4, 199.17(a). Since the establishment of Tricare in 1995, both programs are Tricare/CHAMPUS, or just "Tricare." The purpose of the Tricare program is to improve healthcare services to beneficiaries by creating "managed care support contracts that include special arrangements with civilian sector health care providers." 32 C.F.R. § 199.17(a)(1).

42. Tricare providers have an obligation to provide services and supplies at only the appropriate level and "only when and to the extent medically necessary." 32 C.F.R. § 199.6(a)(5).

43. Tricare's governing regulations are also based on "medical necessity." Tricare's governing regulations require that services provided be "furnished at the appropriate level and only when and to the extent medically necessary," and such care must "meet[] professionally recognized standards of health care [and be] supported by adequate medical documentation…to

evidence the medical necessity and quality of services furnished, as well as the appropriateness of the level of care." 32 C.F.R. 199.6(a)(5).

Tricare – Payment for Qualified Individuals and Supervision Requirements

44. Prior to 2019, Tricare differed from Medicare on its' policies with respect to payment for services rendered by PTAs (or aides). During all times relevant to this action, Tricare did not reimburse for therapy provided by therapist assistants. In order for Tricare to reimburse for services, the provider must be an authorized provider. During all times relevant to this action, under Tricare, PTAs were not on the list of authorized providers and as such services rendered by PTAs were excluded from reimbursement in all practice settings. 32 CFR 199.6.

THE FALSE CLAIMS

False Billings to Medicare and Tricare for Services Provided by Physical Therapist Aides

45. Physical therapist aides are non-licensed employees who may assist a PT or PTA during treatments but may not supervise patients or provide direct patient treatment. Services performed by physical therapy aides cannot be billed to Medicare or Tricare.

46. Defendants presented or caused to be presented claims to Medicare and Tricare for services provided by physical therapy aides using the following CPT codes:

| CPT Code | Treatment | AMA CPT Description | Therapy Description |
|---|---|---|---|
| 97012 | Mechanical Traction | Application of a modality to 1 or more areas; traction, mechanical | Traction involves the clinician applying sustained or intermittent mechanical traction to the cervical and/or lumbar spine. The mechanical force produces distraction between vertebrae thereby relieving pain and increasing tissue flexibility. Once applied, |

11

| | | | the treatment requires supervision. |
|---|---|---|---|
| 97018 | Paraffin Bath | Application of a modality to 1 or more areas; paraffin bath | Also known as hot wax treatments, paraffin baths are primarily used for pain relief in chronic joint problems of the wrists, hands and feet. |
| 97035 | Ultrasound | Application of a modality to 1 or more areas; ultrasound, each 15 minutes | Therapeutic ultrasound is a deep heating modality that produces a sound wave of 0.8 to 3.0 Mhz. In the human body, ultrasound has several pronounced effects on biologic tissues. It is attenuated by certain tissues and reflected by bone. Thus, tissues lying immediately next to bone can receive an even greater dosage of ultrasound, as much as 30% more. Because of the increased extensibility ultrasound produces in tissues of high collagen content, combined with the close proximity of joint capsules, tendons, and ligaments to cortical bone where they receive a more intense irradiation, it is an ideal modality for increasing mobility in those tissues with restricted range of motion. |
| 97140 | Manual Therapy | Manual therapy techniques (eg, mobilization/ manipulation, manual lymphatic drainage, manual traction), 1 or more regions, each 15 minutes | Manual therapy techniques including soft tissue and joint mobilization, manipulation, manual traction, and/or lymphatic drainage to one or more areas. |

| G0283 | Electrical Stimulation | Electrical stimulation (unattended), to one or more areas for indication(s) other than wound care, as part of a therapy plan of care | The clinician applies electrical stimulation to one or more areas in order to stimulate muscle function, enhance healing, and alleviate pain and/or edema. The treatment is supervised after electrodes are applied. |
|---|---|---|---|

47. From at least April 2017 through August 2018, Defendants trained its aides to provide these services and submitted or caused to be submitted to Medicare and Tricare using CPT codes 97012, 97018, 97035, 97140 and G0283 stating that Defendants provided these services by its PTs when such services were actually being performed by physical therapy aides.

48. In addition, Defendant also trained aides to provide Histological Variable Manual Technique ("Hivamat") services that were submitted and billed to Medicare and Tricare using CPT code 97140 when such services are not considered reasonable and necessary.

49. Hivamat utilizes an intermittent electrostatic field via a Hivamat machine. The theory is that electrostatic waves create a kneading effect deep within the damaged tissues (deeper than manual methods), restoring flexibility and blood supply to the affected area, and allowing previously untreatable injuries to be manipulated with a minimum of physical pressure.

50. Services provided by aides are not covered by Medicare because they are not considered reasonable and necessary. Medicare Benefit Policy Manual, Ch. 15, § 230.1.C.

51. Medicare and Tricare paid Defendants for the services based upon the false claims Defendants knowingly presented or caused to be presented.

False Billings to Medicare for Unsupervised PTA Services Performed at Community Pool

52. Physical therapist assistants are licensed clinicians who can only provide therapy services eligible for reimbursement under Medicare when such services are provided under the direct supervision of a licensed Physical Therapist.

53. From at least April 2017 through August 2018, Defendants submitted or caused to be submitted to Medicare using CPT code 97113 – Aquatic therapy – CPT code 971112 – Neuromuscular reeducation – and CPT code 97110 – Therapeutic Exercise – stating that Defendants provided aquatic therapy services by its PTs or at the direct oversight of its PTs when such services were performed by a PTA without oversight or direct supervision by a PT.

54. None of College Park's physical therapy facilities contain a pool for aquatic therapy.

55. Therefore, Defendants' conducted aquatic therapy on its patients at Blue Valley Recreation Activity Center at 6545 W. 151st St., Overland Park, KS 66223 – a wholly separate facility from Defendants' physical therapy facilities.

56. Defendants' patients were expected to pay Blue Valley Recreation for the pool time used.

57. Upon information and belief, Defendants did not have a rental agreement with Blue Valley Recreation for exclusive use of the pool for its patients.

58. PTAs performed the aquatic therapy on patients at the Blue Valley Recreation Activity Center when no PTs were in the building. Defendants' PTs would later bill Medicare for the service.

59. Defendants presented or caused to be presented claims to Medicare for services provided by PTAs who were not under the direct supervision of PTs using the following CPT codes:

| CPT Code | Treatment | AMA CPT Description | Therapy Description |
|---|---|---|---|
| 97113 | Aquatic Therapy | Therapeutic procedure, 1 or more areas, each 15 minutes; neuromuscular reeducation of movement, balance, coordination, kinesthetic sense, posture, and/or proprioception for sitting and/or standing activities | Aquatic therapy with therapeutic exercise is a procedure that uses therapeutic properties of water (e.g. buoyancy, resistance). It is useful in therapy for joint pain and stiffness or post-operative joint rehabilitation. |
| 97112 | Neuromuscular Reeducation | Therapeutic procedure, 1 or more areas, each 15 minutes; aquatic therapy with therapeutic exercises | The clinician performs activities to one or more body area that facilitates reeduction of movement, balance, coordination, kinesthetic sense, posture, and proprioception. |
| 97110 | Therapeutic Exercise | Therapeutic procedure, on one or more areas, each lasting 15 minutes. | Exercises performed in active, active-assisted or passive approach for a loss or restriction of joint motion, strength, functional capacity or mobility that has resulted from a specific disease or injury. |

60. The services in the above table were billed concurrently to Medicare by Defendants.

61. Medicare Part B coverage for aquatic therapy services extends only to treatment performed by or under the direct supervision of PTs. Aquatic therapy services performed by a PTA without direct supervision of a PT in private practice are not covered.

62. CMS has generally defined direct supervision to mean that the supervising private practice therapist must be present in the office suite at the time the service is performed.

63. Defendants falsely billed Medicare for these services when the PTAs were not properly supervised by PTs.

15

64. The claims Defendants submitted or caused to be submitted to Medicare for aquatic therapy listed PTs who did not actually perform, directly supervise or even attend the water aquatic services.

65. Defendants were reimbursed for the cost of the pool by Medicare even though the pool was paid for by Defendants' patients.

66. Medicare paid Defendants for aquatic therapy based upon false claims knowingly presented or caused to be presented by Defendants.

<u>False Billings to Tricare for PTA Services</u>

67. Physical therapist assistants are licensed clinicians that are not authorized providers under Tricare.

68. From at least April 2017 and into 2018, Defendants submitted or caused to be submitted to Medicare and Tricare using CPT codes 97113, 97112, 97113, 97116, 97140 and 97530 stating that Defendants provided these services by its PTs or at the direct oversight of its PTs when such services were performed by a PTA without oversight by a PT.

69. PTAs are not authorized providers under Tricare and as such their services are not payable. Defendants falsely billed Tricare for these services administered by PTAs.

70. The claims Defendants submitted or caused to be submitted to Tricare for aquatic therapy listed PTs who did not actually perform the water aquatic services.

71. Tricare paid Defendants for aquatic therapy based upon false claims knowingly presented or caused to be presented by Defendants.

<u>False Billings for Service Time in Violation of the 8-Minute Rule</u>

72. From at least April 2017 through August 2018, Defendants submitted or caused to be submitted to Medicare bills that were not in compliance with Medicare payment policy.

16

73. When Defendants billed for multiple services in the same day, Defendants did not bill for the service performed for the most minutes. Instead, it billed for the service that provided the most reimbursement.

74. For example, when the following services were provided by Defendants: 10 minutes ultrasound (97035), 16 minutes therapeutic exercise (97110), 10 minutes neuromuscular reeducation (97112) and 6 minutes of manual therapy (97140) for a total of 42 timed minutes, Defendants billed for 1 unit of 97110, 97112 and 97140 and did not bill for 97035. Under this example, Defendant should bill for ultrasound (97035) instead of manual therapy (97140). Manual therapy has a greater – more than double – reimbursement rate than ultrasound.

75. Similarly, when the following services were provided by Defendants: 8 minutes ultrasound (97035), 18 minutes therapeutic exercise (97110), 6 minutes neuromuscular reeducation (97112) and 8 minutes of manual therapy (97140) for a total of 38 timed minutes, Defendants billed for 1 unit of 97110, 97112 and 97140 and did not bill for 97035. Under this example, Defendant should bill for ultrasound (97035) instead of neuromuscular reeducation (97112).

76. Defendants submitted or caused to be submitted to Medicare services that should not have been submitted pursuant to Medicare's 8-Minute Rule.

77. Medicare overpaid Defendants for services provided based upon false claims knowingly presented or caused to be presented by Defendants.

<u>COUNT 1</u>

<u>FALSE CLAIMS ACT 31 U.S.C. § 3729(A)(1)(A)</u>

78. The above paragraphs are realleged as though fully set forth herein.

79. Through the acts described above, Defendants knowingly presented, or caused to be presented false or fraudulent claims for payment or approval by the United States in violation of the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A).

80. Because of Defendants' false or fraudulent claims, the United States has suffered damages.

COUNT 2

FALSE CLAIMS ACT 31 U.S.C. § 3729(a)(1)(B)

81. The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

82. Through the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims in violation of the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(B).

83. Because of Defendants' false records or false statements, the United States has suffered damages.

COUNT 3

UNJUST ENRICHMENT

84. The above paragraphs are realleged as though fully set forth herein.

85. Defendants knowingly obtained payments from the United States under the Medicare program.

86. It is inequitable for Defendants to retain the funds under the circumstances.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States ex rel. Edward Ernst Jr., demands and prays for judgment be entered in its favor and against Defendants as follows:

1. As to Count 1, judgment against Defendants for:

    a. Treble the government's damages;

    b. The maximum civil penalties as provided by law for each false claim or false statement;

    c. Attorneys' fees; and

    d. Any other further relief that may be just and proper.

2. As to Count 2, judgment against Defendants for:

    a. Treble the government's damages;

    b. The maximum civil penalties as provided by law for each false claim or false statement;

    c. Attorneys' fees; and

    d. Any other further relief that may be just and proper.

3. As to Count 3, judgment against the Defendants for the amount of the benefit by which the Defendants were unjustly enriched, plus costs, interest, and such other and further relief as may be just and proper.

4. Any other further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States demands a jury trial in this case.

Respectfully Submitted:

**PREUSS | FOSTER**

*/s/ Thomas J. Preuss*
Thomas J. Preuss, KS #21431
Shawn G. Foster, KS #19090
10601 Mission Rd., Suite 250

Leawood, KS 66206
Ph. 816-307-2788
Fax:816-336-9705
Email: tjpreuss@pflaw.com
       sfoster@pflaw.com


**THE LAWLER FIRM, LLC**

<u>*/s/ Christopher J. Lawler*</u>
Christopher J. Lawler, KS #21095
4510 Belleview Avenue, Suite 202
Kansas City, MO 64111
Phone: 816-912-4700
Fax: 866-567-9151
Email: chris@lawlerfirmllc.com

**ATTORNEYS FOR PLAINTIFFS**