IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. EDWARD ERNST JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-2085-JWL |
| | ) | |
| HCA HEALTHCARE, INC.; | ) | |
| MIDAMERICA DIVISION, INC. | ) | |
|   d/b/a HCA MIDWEST HEALTH; | ) | |
| OVERLAND PARK SURGICAL | ) | |
|   SPECIALTIES, LLC | ) | |
|   d/b/a COLLEGE  PARK FAMILY CARE | ) | |
|   CENTER PHYSICIANS GROUP; | ) | |
| COLLEGE PARK ANCILLARY, LLC | ) | |
|   d/b/a COLLEGE PARK PHYSICAL | ) | |
|   THERAPY; and | ) | |
| COLLEGE PARK FAMILY CARE | ) | |
|   CENTER, P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This *qui tam* action under the False Claims Act presently comes before the Court on defendants' various motions to dismiss.  Because defendant College Park Family Care Center, P.A. lacks the capacity to be sued, the Court **grants** that defendant's motion (Doc. # 38), and plaintiff's claims against it are hereby dismissed.  The remaining defendants' motions (Doc. ## 36, 40) are also **granted**, and plaintiff's claims against those defendants are hereby dismissed, although plaintiff is granted leave to amend his claims, on or before

**December 14, 2020**, to attempt to cure the pleading deficiencies cited herein with respect to plaintiff's False Claims Act claims.

## I.   <u>Background</u>

By his amended complaint, plaintiff asserts claims against five defendants under the federal False Claims Act (FCA), 31 U.S.C. § 3729(a) and (b).  Plaintiff alleges that defendants submitted false claims to government programs Medicare and Tricare for reimbursement for physical therapy services provided in Overland Park, Kansas, and Olathe, Kansas, from April 2017 to August 2018, while plaintiff was an employee of the physical therapy business.  Plaintiff alleges four specific fraudulent schemes perpetrated by defendants:  (1) falsely billing Medicare and Tricare for services provided by physical therapy aides or techs (instead of by therapists or by physical therapy assistants (PTAs)); (2) falsely billing Medicare for aquatic therapy services provided by a PTA without supervision of a therapist; (3) falsely billing Tricare for services provided by PTAs without oversight by a therapist; and (4) falsely billing Medicare with respect to multiple services provided in one day without compliance with the "8-minute rule" for billing.  Plaintiff has also asserted a claim for unjust enrichment.

On February 12, 2019, relator Edward Ernst initiated this *qui tam* action on behalf of the United States pursuant to 31 U.S.C. § 3730(b).  On April 17, 2020 (after having received two extensions of time), the United States filed a notice by which it declined to take over or intervene in the action.  After defendants filed a motion to dismiss the original

2

complaint, plaintiff filed an amended complaint.  Defendants now seek dismissal of the claims asserted in the amended complaint.

## II.    <u>Governing Standard</u>

The Court will dismiss a cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *See Bell Atlantic*, 550 U.S. at 555.  The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## III.    <u>Capacity of College Park FCC to Be Sued</u>

The Court first addresses the argument by defendant College Park Family Care Center, P.A. ("College Park FCC") that under Kansas law it lacks the capacity to be sued more than three years after its dissolution in 2015.  Plaintiff alleged, and presently concedes, that College Park FCC was formally dissolved in 2015.  Specifically concerning this defendant, plaintiff alleges as follows:

3

12.     [Defendants] HCA and HCA Midwest acquired College Park Family Care Center, P.A. ("College Park FCC") medical practice in 2013. After acquiring College Park FCC, HCA and HCA Midwest subsequently established new subsidiary corporations to continue the operations of the College Park Family Care Center healthcare practice as an HCA provider. The subsidiary corporations of HCA that currently operate as College Park Family Care are [defendant] College Park Ancillary, LLC d/b/a College Park Physical Therapy and [defendant] Overland Park Surgical Specialties, LLC d/b/a College Park Family Care Center Physician Group.

. . .

15.     Defendant College Park Family Care Center, P.A. ("College Park FCC") was a Kansas professional corporation that provided services to residents of the Kansas City metropolitan area, including medical care and care treatment, and physical therapy services and treatment to patients who were Medicare, Medicaid, and/or Tricare beneficiaries.  In 2013, College Park FCC was acquired by HCA and/or other HCA related subsidiaries. After being acquired by HCA, College Park FCC continues [*sic*] its operations under the name College Park Family Care Center through at least two HCA subsidiary companies, College Park PT and College Park FCCGP. College Park FCC was formally dissolved in 2015, but is still continued as a corporate body and subject to this action under K.S.A. § 17-6807.  College Park [FCC] has been named as a defendant in this lawsuit for purposes of the lookback period under False Claims Act, 31 U.S.C. §§ 3729-3733.

(Footnote omitted.)

College Park FCC relies on K.S.A. § 17-6807, which provides that a dissolved corporation shall be continued for three years for the purpose of closing the business, including prosecuting and defending lawsuits, but not for the purpose of continuing the business; and that any suit against the corporation begun before or within three years of the dissolution shall not be abated by reason of that dissolution.  *See id.*[1]  The Kansas Supreme

---

[1] Plaintiff does not dispute that Kansas law governs College Park FCC's capacity to be sued in this action.  *See* Fed. R. Civ. P. 17(b)(2) (corporation's capacity to be sued is determined by the law under which it was organized).

Court has interpreted Section 17-6807 and held that "[a]bsent a court-ordered extension [for which application was made prior to the end of the three-year period] or the appointment of a trustee or receiver, a Kansas corporation which has been dissolved, either voluntarily or involuntarily, may not sue or be sued after the three-year period has ended." *See Patterson v. Missouri Valley Steel, Inc.*, 229 Kan. 481, 491 (1981).  College Park FCC was dissolved in February 2015, and plaintiff did not file this action until February 2019, one year after expiration of the three-year winding-up period under Section 17-6807. Accordingly, under *Patterson*, College Park FCC lacks the capacity to be sued in this action.

Plaintiff has not cited any instance in which the Kansas Supreme Court has failed to apply or has recognized an exception to this rule.  In seeking an exception in this case, plaintiff cites only the opinion by the Kansas Court of Appeals in *Mitchell v. Miller*, 27 Kan. App. 2d 666 (2000).  In *Mitchell*, the court allowed a judgment to stand against a corporation in a suit commenced more than three years after the corporation had forfeited its articles of incorporation for failure to pay annual dues and file annual reports.  *See id.* at 670-72.  The court held that Section 17-6807, which it interpreted liberally as a remedial statute, did not protect the corporation because it continued to do business as usual after the forfeiture.  *See id.* at 671-72.  The court did not explain how its holding could be reconciled with the holding of the Kansas Supreme Court in *Patterson*.

The Court declines to recognize such an exception in the present case.  As conceded by plaintiff, College Park FCC did not merely forfeit its articles of incorporation for a technical reason; rather, it was formally dissolved.  Plaintiff alleges that after it was

purchased by the HCA defendants in 2013, College Park FCC "continues [*sic*] its operations" through two HCA subsidiaries, and that it "is still continued as a corporate body" after the 2015 dissolution. Plaintiff has not alleged any facts, however, to support its conclusory allegation that College Park FCC continued to do business as usual after the 2013 purchase and the 2015 dissolution. Indeed, in light of plaintiff's allegation that the HCA defendants operated the therapy business through two other subsidiaries, plaintiff has not offered a plausible claim or explanation as to why the HCA defendants would also run the business through College Park FCC even while formally dissolving that entity. Plaintiff has not specifically alleged conduct by this defendant related to the alleged schemes after the dissolution. Thus, the Court applies the rule set forth in *Patterson*, under which College Park FCC lacks the capacity to be sued.

In the alternative, plaintiff requests leave to file a motion for appointment of a trustee or receiver for College Park FCC. Such appointment would allow that defendant to be sued pursuant to the exception noted in *Patterson*. The statute cited in *Patterson*, however, provides only for appointment by a Kansas district court, and thus this court lacks the authority to make such an appointment. *See* K.S.A. § 17-6808; *see also In re Liberal Mack Sales, Inc.*, 24 B.R. 707, 711 (Bankr. D. Kan. 1982) (in amending Section 17-6808 to refer to a "district court" instead explicitly referring to state and federal courts as in the previous version, Kansas intended to allow appointment only by the state court). Moreover, even if the Court had authority to make such an appointment, it would not do so in this case, as plaintiff has offered no support for his bare assertions that College Park FCC continued its operations and was somehow involved in the fraudulent schemes alleged

6

in this action.  Accordingly, the Court grants the motion for dismissal of the claims against defendant College Park FCC.

### IV. <u>Unjust Enrichment Claim</u>

The Court now turns to the claims asserted against the remaining four defendants. As a preliminary matter, plaintiff does not oppose defendants' argument that plaintiff lacks standing to assert a claim for unjust enrichment.  Accordingly, defendants' motions are granted with respect to that claim.

### V. <u>Pleading of FCA Claims with Particularity</u>

The remaining four defendants are HCA Healthcare, Inc. ("HCA"); MidAmerica Divison, Inc. d/b/a HCA Midwest Health ("HCA Midwest"); College Park Ancillary, LLC d/b/a College Park Physical Therapy ("College Park PT"); and Overland Park Surgical Specialties, LLC d/b/a College Park Family Care Center Physician Group ("College Park FCCPG").  These defendants seek dismissal of plaintiff's FCA claims on the basis that plaintiff has not pleaded such claims with particularity as required by Fed. R. Civ. P. 9(b). Plaintiff does not dispute that Rule 9(b)'s requirement of pleading fraud with particularity applies to his FCA claims.  *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006).

Rule 9(b) generally requires a plaintiff to set forth the time, place, and contents of the false representations; the identity of the party making the false statements; and the consequences thereof – in other words, the who, what, where, when, and how of the alleged

fraud. *See id.* at 727. In *Sikkenga*, the Tenth Circuit explained that a plaintiff asserting FCA claims must allege with particularity both the false claims submitted to the government and the underlying fraud scheme, as follows:

> Liability under the FCA requires a false claim – a defendant's presentation of a false or fraudulent claim to the government is a central element of every False Claims Act case. Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the circumstances constituting fraud and mistake that must be pled with particularity under Rule 9(b). However, unless such pleadings are linked to allegations, stated with particularity, of the actual false claims submitted to the government, they do not meet the particular requirements of Rule 9(b). We agree with our sibling circuit that:
>
>> Rule 9(b)'s directive that the circumstances constituting fraud and mistake shall be stated with particularity does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payment must have been submitted, were likely submitted or should have been submitted to the Government.
>
> We conclude that Sikkenga's complaint falls woefully short of adequately pleading that false or fraudulent claims were submitted by [the defendant]. As stated by the First Circuit, to satisfy Rule 9(b)'s requirements:
>
>> [A] relator must provide details that identify particular false claims for payment that were submitted to the government. In a case such as this, details concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied for each allegation included in a complaint. However, like the Eleventh Circuit, we believe that some of this information, for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

*See id.* at 727-28 (citations and internal quotations omitted).

8

Plaintiff's allegations do not satisfy this requirement from *Sikkenga* that the actual false claims submitted to the government – and not merely the underlying fraudulent scheme – be pleaded with particularity. It is true that the Tenth Circuit in *Sikkenga* did not require that all of the cited information to be included, but it did require some, and plaintiff has provided precious little of that information. In the amended complaint, plaintiff has provided no details about the actual claims submitted by defendants to Medicare and Tricare; instead, he has merely alleged a date range for the provision of services as part of the underlying schemes, as well as the allegation that fee slips describing services (including particular treatment codes) were submitted to the HCA defendants for eventual billing to Medicare and Tricare. Thus, plaintiff has not alleged the dates of the submission of claims to the government, the claim numbers, the amounts of claims, or the identity of any person involved in the submission of the claims. Plaintiff has not provided any notice to defendants of which claims are alleged to have been false – while plaintiff cites certain treatment codes used in the alleged schemes, he does not allege that all claims using those codes were fraudulent. As the court stated in *Sikkenga*, it cannot simply be assumed that false claims were submitted as a part of the scheme.

Moreover, although plaintiff insists that the claims contained misrepresentations, he has not – either in his complaint or in his briefs opposing dismissal – stated the actual content of the misrepresentation. For instance, plaintiff cites the treatment codes, but he has not alleged that the actual claims to the government included those codes; nor has he alleged or explained whether the codes themselves include a representation concerning the person who provided the treatment (whether a therapist, a PTA, or PT aide/tech). Nor has

plaintiff alleged that the claims otherwise included a representation that a particular person (by job title) provided the treatment.  Plaintiff must provide such notice concerning the manner in which the claims were false.  Thus, plaintiff's allegations do not satisfy the standard set forth in *Sikkenga* for pleading with particularity the actual claims submitted to the government.

It appears, however, that the Tenth Circuit may have retreated somewhat from its strict requirement in *Sikkenga* that details of the false claims be pleaded.  In *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163 (10th Cir. 2010), after noting that the Supreme Court had clarified pleading requirements in the *Twombly* and *Iqbal* cases since *Sikkenga* was decided, the Tenth Circuit stated the pleading requirement under Rule 9(b) for an FCA claim as follows:  "[C]laims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme."  *See id.* at 1172.  The Tenth Circuit subsequently cited the same standard in *United States ex rel. Polukoff v. St. Mark's Hospital*, 895 F.3d 730 (10th Cir. 2018), *cert. dismissed*, 139 S. Ct. 2690 (2019).  *See id.* at 745.  District courts have noted that the Tenth Circuit has thus seemed to revise its strict standard from *Sikkenga*.  *See, e.g.*, *United States ex rel. Allison v. Southwest Orthopaedic Specialists, PLLC*, 2020 WL 5984814, at *6 n.4 (W.D. Okla. Oct. 8, 2020) (citing cases); *see also United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750, 772-73 (6th Cir. 2016) (citing *Lemmon* and *Sikkenga* in noting that the Tenth Circuit and other circuits applying a heightened pleading standard requiring particularity concerning submitted claims had "retreated from such a requirement in cases in which

other detailed factual allegations support a strong inference that claims were submitted"). The parties have not addressed the *Lemmon* standard in their briefs in this case.

In his amended complaint, plaintiff has alleged from personal knowledge that fee slips were submitted for eventual billing for services for Medicare and Tricare patients that, because certain requirements had not been followed, should not have been payable under those programs. Thus, there is a factual basis for a reasonable inference that false claims were submitted. Under *Lemmon*, such allegations would excuse plaintiff from needing to plead specific details concerning the actual claims submitted to the government. In addition, as plaintiff notes, specific information concerning the actual claims to Medicare and Tricare would be within defendants' exclusive control. *See Polukoff*, 895 F.3d at 745 ("we excuse deficiencies that result from the plaintiff's inability to obtain information within the defendant's exclusive control;" defendant there no doubt knew which employees handled federal billing for procedures reimbursable under Medicare).

Nevertheless, the Court concludes that plaintiff has not sufficiently pleaded his FCA claims with the required particularity. Although there may be a basis to infer that claims were submitted by defendants to Medicare and Tricare based on the fee slips, plaintiff has not explained how those claims contained false statements, as noted above. In addition, plaintiff appears to allege that defendants failed to comply with regulations or other requirements for reimbursement by Medicare and Tricare. As defendants point out, however, not all regulatory violations create FCA liability. *See Universal Heath Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016). In *Escobar*, the Supreme Court held that FCA liability could be based on a theory of implied false

11

certification, in which the defendant did not necessarily make an affirmative misrepresentation, but rather failed to disclose noncompliance with a requirement for payment. *See id.* at 1999-2001. In *Polukoff*, the Tenth Circuit explained that a false claim under the FCA may be either factually false, because it contains a false statement concerning the services provided; or legally false, because a condition of payment has not been satisfied. *See Polukoff*, 895 F.3d at 741. Moreover, claims of legal falsity may rest on either of two theories: express false certification, in which the defendant actually certified compliance falsely; and implied false certification, in which the defendant falsely implied entitlement to payment by submitting the claims (as discussed in *Escobar*). *See id.* In the amended complaint in this case, plaintiff has not made clear the theory of liability on which he relies with respect to any of the alleged fraudulent schemes.

The Court also concludes that plaintiff has not pleaded sufficient facts concerning the underlying schemes themselves, as would be required under *Lemmon* to excuse the lack of information pleaded concerning the actual billing to the government. For the first scheme, plaintiff alleges that defendants falsely billed Medicare and Tricare for services provided by PT aides or techs, instead of by therapists or PTAs as required. To support that theory, plaintiff identifies a range of dates (his term of employment) and various treatment codes used in this scheme. Plaintiff has also provided three specific examples by reference to particular services provided to particular patients. Plaintiff has not identified any particular aides or techs who provided services under this scheme, however. Moreover, although plaintiff alleges that aides were trained to provide such services, he has not identified any person involved in that training. Plaintiff has not provided

information sufficient to allow defendant to identify the scope of the alleged scheme. Plaintiff cites five treatment codes, but he has not alleged that every use of those codes was part of the fraudulent scheme. Plaintiff references a record attached to the complaint in pleading this scheme, but plaintiff has not explained how that record supports his claims – the record lists a therapist for a particular visit, and thus does not provide evidence that a service was provided without a therapist.

For the second scheme, plaintiff alleges that defendants falsely billed Medicare for aquatic therapy services provided within the date range at a particular location by a particular PTA (identified by name) without supervision as required for reimbursement. Plaintiff has not identified a theory of liability related to this scheme, however – did defendants falsely represent that a therapist supervised the service? did they falsely certify compliance with requirements? did they merely fail to comply? Plaintiff also alleges that these services were provided at a pool without a rental agreement with defendants as required, but it is not clear whether plaintiff asserts that submitted claims were false for that reason.

For the third scheme, plaintiff alleges that defendants falsely billed Tricare for services provided by PTAs without supervision. Plaintiff has identified a vague date range for this scheme ("[f]rom at least April 2017 (and likely earlier) and into 2018") and has identified six treatment codes. Again, however, plaintiff has not alleged that every use of those codes with a Tricare patient was fraudulent. Nor has plaintiff identified any PTA or patient with respect to this scheme, or identified any particular occasion on which the scheme was implemented. The pleading of this scheme falls woefully short of the required

standard of particularity, especially in conjunction with the lack of any detail concerning the actual claims submitted to the government.

For the fourth scheme, plaintiff alleges that defendants falsely billed Medicare for multiple services provided in one day without compliance with the "8-minute rule." Plaintiff has identified a date range and provided two specific examples involving a particular patient and a particular therapist. The scope of the scheme has not been alleged, however. Plaintiff has not alleged that a violation occurred on every occasion involving multiple services, or on every such occasion involving the named therapist. Plaintiff has not identified any other persons involved in the scheme.[2]

Finally, plaintiff's claims also lack sufficient particularity with respect to the particular defendants alleged to have perpetrated each scheme. In the amended complaint, plaintiff has alleged certain conduct by "College Park", defined to mean both College Park PT and College Park FCCPG. Those two defendants are separate entities, however. Plaintiff must make clear in any further amendment the basis for asserting claims against both defendants. Plaintiff must further make clear whether either defendant or both engaged in particular alleged conduct, including billing, training, and providing therapy services.

Even more egregiously, plaintiff consistently alleges conduct by "defendants" in submitting claims and perpetrating the schemes, without clarifying which defendant or

---

[2] Of course, if plaintiff is unable to provide sufficient information to support a broader claim with respect to a particular scheme upon amendment, his claim could be limited to particular examples alleged.

defendants were responsible for which conduct.  In that regard, plaintiff has not even distinguished between the two HCA defendants and the two College Park defendants.  The HCA defendants argue that they may not be held liable for FCA violations merely by virtue of their ownership of the allegedly offending companies.  Plaintiff agrees with that general statement of the law, but he insists that he alleges wrongful conduct by the HCA defendants, including the submission of claims to the government.  As defendants note, however, plaintiff has not actually alleged that the HCA defendants in particular submitted false claims; rather, he alleges only that fee slips were submitted to HCA for billing and that "defendants" submitted false claims to the government.  Plaintiff has also failed to allege that the HCA defendants in particular (as opposed to the College Park defendants) were involved in the underlying schemes, including training and provision of therapy services.  In the absence of some distinction between the defendants, plaintiff has not stated claims of fraud against any particular defendant with particularity.  In any future amendment, plaintiff must make clear the specific bases for liability for the HCA defendants, especially HCA, which defendants insist is a mere holding company.

For these reasons, plaintiff's FCA claims are subject to dismissal.  The Court would ordinarily allow a plaintiff the opportunity to amend to cure any pleading deficiencies.  Defendants argue that plaintiff should not be afforded such opportunity because he has already amended once in response to a motion to dismiss.  This is the first ruling by the Court on the sufficiency of the allegations, however, and thus the Court will grant plaintiff one additional opportunity to attempt to state cognizable claims under the FCA.  Plaintiff shall file any such amended complaint on or before **December 14, 2020**.

## VI.    Pleading of Other FCA Elements

Defendants also argue that plaintiff has failed to allege sufficient facts under Fed. R. Civ. P. 8(a) for plausible satisfaction of particular elements of his FCA claims.  Because the Court has granted plaintiff leave to amend, it will briefly address these arguments.

### A.    *Falsity*

Defendants argue that plaintiff has not plausibly alleged the falsity of claims submitted by defendants to Medicare and Tricare.  Defendants note that the complaint does not make clear how any particular claim included a false statement.  As discussed above, in any further amendment, plaintiff must make clear the theory of liability for each scheme (express misrepresentation or false certification or false implied certification), including how the claims contained any misstatements of fact.

### B.    *Materiality*

Defendants next challenge the sufficiency of plaintiff's allegations with respect to the element of materiality.  *See United States ex rel. Janssen v. Lawrence Mem. Hosp.*, 949 F.3d 533, 539 (10th Cir. 2020) (to show a false claim under the FCA, plaintiff must show a false statement or fraudulent course of conduct that is material), *cert. denied*, 2020 WL 5883407 (U.S. Oct. 5, 2020).  The Tenth Circuit has described this element as follows:

> [T]he FCA does not impose liability for any and all falsehoods.  Simply put, the FCA is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations.  Instead FCA liability attaches only where the alleged misrepresentations are material to the government's payment decision.

In the FCA context, materiality is a rigorous and demanding requirement. Assessing materiality requires analysis of the effect on the likely or actual behavior of the recipient of the alleged misrepresentation. Thus, the sine qua non of materiality is some quotient of potential influence on the decisionmaker . . . .

. . .

. . . In cases such as this one, where the allegations base FCA liability on noncompliance with regulatory or contractual provisions, relevant factors include, but are not limited to (1) whether the Government consistently refuses to pay similar claims based on noncompliance with the provision at issue, or whether the Government continues to pay claims despite knowledge of the noncompliance; (2) whether the noncompliance goes to the very essence of the bargain or is only minor or insubstantial; and (3) whether the Government has expressly identified a provision as a condition of payment. None of these factors alone are dispositive.

*See id.* at 540-41 (citations and internal quotations and footnote omitted). "Materiality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question." *See id.* at 539. The Supreme Court has noted that materiality is not too fact-intensive for dismissal of an FCA case at the pleading stage, as FCA plaintiffs "must plead their claims with plausibility and particularity under [Rules] 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." *See Escobar*, 136 S. Ct. at 2004 n.6.

Defendants argue that plaintiff has only conclusorily alleged materiality, without supporting facts. Defendants note that under *Escobar*, materiality is not satisfied merely because the government has designated compliance with a requirement as a condition of payment. *See id.* at 2003. Defendants further note that plaintiff has not alleged that the government ordinarily refuses to pay in the event of such violations or that the alleged fraud went to the essence of the bargain. Defendants also argue that the government's

17

refusal to intervene in this case provides evidence that the allegedly false claims were not material.

This materiality inquiry will depend on the particular theories and claims alleged by plaintiff in any amended complaint, and thus the Court does not decide this issue definitively at this time.   Nevertheless, it appears to the Court that plaintiff's present allegations would be sufficient at this pleading stage.   Plaintiff has not merely alleged materiality in a conclusory fashion.   Plaintiff has also pleaded facts that would support the argument that the alleged falsehoods went to the essence of the bargain, as having the services provided by properly licensed personnel would not necessarily be considered a minor or insignificant matter.   Moreover, the key, as noted by the Tenth Circuit, is the influence on the decisionmaker, and plaintiff has alleged that defendants acted with the knowledge that the government would not pay the claims unless they were falsified in this manner.   Thus, plaintiff has not merely alleged that compliance was a condition of payment.

C.   _Intent_

Finally, defendants challenge plaintiff's allegations concerning the intent requirement for FCA claims.   The FCA imposes liability on a person who "knowingly" presents a false claim or uses a false record to make a claim.   *See* 31 U.S.C. § 3729(a)(1)(A), (B).   "Knowingly" means the person has actual knowledge of the information, acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity.   *See id.* § 3729(b)(1).

The Court rejects defendants' argument that plaintiff has alleged satisfaction of this element only conclusorily.  Considering the complaint in the light most favorable to plaintiff, he has alleged that employees were trained to act in noncompliance, that the violations involved a matter – the training and licensure of the employees providing the services – that would ordinarily be considered significant, such that defendants would be aware of the applicable requirements, and that he discussed such compliance issues with superiors.  Of course, in any amended complaint, plaintiff must plausibly allege the requisite knowledge by each defendant with respect to that defendant's alleged conduct.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion to dismiss filed by defendant College Park Family Care Center, P.A. (Doc. # 38) is hereby **granted**, and plaintiff's claims against that defendant are hereby dismissed.

IT IS FURTHER ORDERED BY THE COURT THAT the remaining defendants' motions to dismiss (Doc. ## 36, 40) are hereby **granted**, and plaintiff's claims against those defendants are hereby dismissed, although plaintiff is granted leave to amend his claims, on or before **December 14, 2020**, to attempt to cure the pleading deficiencies cited herein with respect to plaintiff's False Claims Act claims.

IT IS SO ORDERED.

Dated this 23rd day of November, 2020, in Kansas City, Kansas.

_s/ John W. Lungstrum_
John W. Lungstrum
United States District Judge